Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SHAWN D. SHAW,

        Petitioner,

v.

UNITED STATES OF AMERICA,

        Respondent.

Civil Action No. 19-16702 (ES)

OPINION

**SALAS, DISTRICT JUDGE**

    Petitioner Shawn D. Shaw ("Petitioner"), a prisoner incarcerated at the Federal Correctional Institution Elkton in Lisbon, Ohio, is proceeding *pro se* with a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (D.E. No. 3 ("Petition" or "Pet.")[1]). Before the Court is Petitioner's sole remaining claim ("Ground One") asserting that his trial counsel rendered ineffective assistance by failing to confer with and call an expert witness to rebut the Government's DNA evidence. For the following reasons, the Court **DENIES** Ground One and **DENIES** a certificate of appealability.

**I.    BACKGROUND**

    The Court recounts only the facts relevant to this Opinion. In early 2016, Petitioner faced trial for the alleged sexual assault of E.S.—a female pretrial detainee—that occurred in the Essex County Correctional Facility ("ECCF") in December 2010 where Petitioner worked as a correctional officer. *See United States v. Shaw*, 891 F.3d 441, 444 (3d Cir. 2018). On the evening

---

[1]    For pin cites to Docket Entry Numbers 3 the Court relies on the pagination automatically generated by the court's electronic filing system.

of the assault, a snowstorm resulted in short staffing at ECCF; thus, Petitioner was the sole officer on duty the night of the assault. *See id.* at 445. The Court of Appeals for the Third Circuit recounted the incident at follows:

> When Shaw arrived for his shift, some of the women including E.S. "flashed" him with their buttocks as "sort of a hazing ritual to the new officer in the unit." Shaw responded by making sexual comments to E.S., such as asking if he can "hit that," which E.S. understood to be a request to perform sexual acts. Shaw also spoke over an intercom connected to the cell that E.S. shared with a cellmate, made explicit sexual advances, and threatened that he was "going to come in there" and "get [her] out of there."
>
> Shortly before 3:00 a.m. on December 28, 2010, E.S. awoke to Shaw in her cell. Shaw removed E.S.'s pants, "forced himself on [her]," by "[p]ressing down" his hand on her chest so that she was unable to get up, and digitally penetrated her vagina[.] Shaw then removed his own pants and underwear and laid on top of E.S. with the weight of his body. Shaw proceeded to engage in sexual intercourse with E.S. who was unable to move and "felt like [she] couldn't breathe."

*Id.* (internal citations omitted).

E.S. did not immediately report the incident. *Id.* Once confronted, however, she formally reported the sexual assault and underwent an examination by a Sexual Assault Nurse Examiner. Semen was found on E.S.'s cervix, and the Government obtained a DNA mixture. *Id.* At trial, the Government's expert testified that, within the African American population,[2] the DNA obtained was approximately "28.9 million times more likely" composed of E.S. and Petitioner's DNA than E.S. and a random individual's DNA. (D.E. No. 19-14, Feb. 1, 2016 Transcript at 170:10–21).

On February 5, 2016, a jury convicted Petitioner of one count of deprivation of civil rights under color of law in violation of 18 U.S.C. § 242 and one count of obstruction of justice in violation of 18 U.S.C. § 1512(b)(3). *Shaw*, 891 F.3d at 446. On June 13, 2016, this Court sentenced Petitioner to a term of 300 months' imprisonment on Count I to run concurrently with

---

[2] Petitioner is African American.

240 months' imprisonment on Count II, and five years of supervised release. (*Shaw*, No. 13-0660, D.E. No. 98). Indeed, as recounted by the Third Circuit, Petitioner's sentence "represented a downward variance from the Sentencing Guideline range of life." *Shaw*, 891 F.3d at 446. On June 15, 2016, this Court entered a final judgment against Petitioner. (*Shaw*, No. 13-0660, D.E. No. 99). An amended judgment was entered on March 15, 2018. (*Id.* at D.E. No. 103).

Petitioner filed a direct appeal on June 17, 2016. (*Id.* at D.E. No. 100). The Third Circuit subsequently affirmed Petitioner's judgment. *Shaw*, 891 F.3d at 455.

Petitioner initiated the instant matter on August 14, 2019 by filing a motion to vacate his sentence with the Court. (*See* Pet.). The Petition raises three grounds to vacate, set aside or correct his sentence. Petitioner asserts that trial counsel rendered ineffective assistance by (i) failing to confer with and call as a witness forensic scientist Arthur W. Young to rebut the Government's expert witness on the DNA evidence and (ii) failing to impeach E.S. for her allegedly false testimony that she had been seeing a therapist in connection with the sexual assault. (Pet. at 4–6 & 15–38). Finally, Petitioner asserts that the Government elicited perjured testimony from E.S., which entitles him to a new trial. (Pet. at 7 & 38–40).

In a prior opinion, the Court denied Petitioner's ineffective assistance claim for failing to impeach E.S. and Petitioner's perjured testimony claim. (D.E. No. 25 ("May 19, 2022 Opinion")). However, the Court reserved judgment on Petitioner's ineffective assistance claim for failing to confer with and call Young pending supplemental briefing from the parties. (*See id.*)

The parties have since submitted supplemental briefing. (*See* D.E. No. 29, ("Resp. Supp. Br."); D.E. No. 34 at 4–9 ("Pet. Supp. Br.")[3]). Accordingly, the matter is ripe for determination.

---

[3]   For pin cites to Docket Entry Number 34, the Court relies on the pagination automatically generated by the court's electronic filing system.

## II. LEGAL STANDARD

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255(a) provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Unless the moving party claims a jurisdictional defect or a constitutional violation, the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, (or) an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (citing *United States v. Timmreck*, 441 U.S. 780, 783 (1979) and quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). A district court must hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255(b); *see also United States v. Booth*, 432 F.3d 542, 545–46 (3d Cir. 2005).

## III. DISCUSSION

### A. Ground One: Ineffective Assistance of Counsel for Alleged Failure to Confer with an Expert

In Petitioner's sole remaining claim, he alleges that his trial counsel, Mark Fury, Esq., provided ineffective assistance by failing to confer with and call forensic scientist Arthur W. Young as an expert witness to rebut the Government's expert witness on DNA evidence. (*See* Pet.

4

at 4 & 15–35).

The two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington* governs claims asserting ineffective assistance of counsel. 466 U.S. 668, 687 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient." *Id.* "To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689. A petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Id.* at 687. To establish prejudice, a petitioner "need not establish that the attorney's deficient performance more likely than not altered the outcome" of the petitioner's case, but only that there is a reasonable probability of such an effect upon the outcome of the case. *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).

Here, the record clearly refutes Petitioner's claim that Fury failed to confer with Young regarding the DNA evidence. In addition to Attorney Fury's own affidavit indicating that he conferred with Young, (*see* D.E. No. 19-1 ("Fury Affidavit")), Young's October 27, 2022 affidavit, which Petitioner submitted in support of his motion, corroborates Fury's account and belies Petitioner's assertions. (*See* D.E. No. 34 at 1–3 ("October 27, 2022 Young Affidavit")). More specifically, according to Young's affidavit, Fury conferred with Young in or around December 2015 regarding the DNA evidence used against Petitioner. (*See id.* ¶ 2). Together, "[they] reviewed voluminous scientific materials, including those items covered in [Young's] 2020

affidavit" and "discussed the application of [his] opinions under Federal case law and how [his] testimony would assist in the defense of [Petitioner.]" (*Id.* ¶ 3). Moreover, "Mr. Fury guided [Young] through anticipated questions and [they] conferred again as trial dates arose." (*Id.* ¶ 4). Accordingly, Petitioner's claim that Fury's performance was deficient because he allegedly failed to confer with Young is belied by the record, as is his claim that Fury ignored Young's report.

Moreover, Petitioner fails to demonstrate that Fury's decision not to call Young as an expert witness was deficient. As set forth in his affidavit, Fury explained his strategic decision not to call Young:

> Mr. Young could not provide any opinion that would exclude Mr. Shaw from the pool of potential contributors to the DNA sample. Accordingly, it was my opinion that Mr. Young would not have provided any evidence at trial that would have been helpful to the defense case. Indeed, in my view, sponsoring an expert who could not exclude Mr. Shaw would have been very harmful to the defense case, more harmful than not calling an expert at all.
>
> . . .
>
> Instead of calling an expert, our strategy instead was to vigorously cross-examine the Government witnesses, including the Government's expert.

(*See* Fury Affidavit ¶¶ 6–8).

Fury's decision was reasonable. First, as noted above, Fury thoroughly investigated the facts relevant to making the decision by repeatedly conferring with Young. As such, his decision is "virtually unchallengeable." *Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

Second, Fury's rationale for not calling Young as an expert witness is logical and supported by the record. In his 2020 affidavit, Young concedes that "it was not possible to exclude Mr. Shaw

6

as the source of the [foreign DNA]" in the samples taken from the victim. (*See* D.E. No. 22 ("December 10, 2020 Young Affidavit") ¶ 20). Although, as Petitioner points out (Pet. Supp. Br. at 6–7), Young asserts other ways in which his testimony would have challenged the methodology and conclusions of the Government's expert (*see generally* December 10, 2020 Young Affidavit), the same could be done through cross examination. *See Harrington*, 562 U.S. at 111 (2011) ("In many instances cross-examination will be sufficient to expose defects in an expert's presentation."). By choosing to cross examine the Government expert rather than calling Young as an expert witness, Fury avoided the possibility of the Government eliciting Young's admission that he could not exclude Petitioner as a potential source of the DNA samples collected from the victim.[4] *Mitchell v. Artus*, No. 07-4688, 2008 WL 2262606, at *29–30 (S.D.N.Y. June 2, 2008), *report and recommendation adopted*, 2008 WL 3884373 (S.D.N.Y. Aug. 21, 2008) (stating that the fact that petitioner's counsel hired an expert, but did not call the expert to testify at trial, suggested that the expert would not have rebutted the state's testimony or that counsel was sufficiently able to address the expert's testimony through cross examination, thereby constituting a "reasonable strategic choice" by petitioner's counsel, which the court would not second-guess on

---

[4] To be thorough, Petitioner argues that "Expert Young [ ] informed Defense Attorney Fury that there was a pathway to exclude Petitioner Shaw" as the source of the foreign DNA found in the samples taken from the victim. (*See* Pet. Supp. Br. at 5–7). Specifically, Petitioner points to paragraphs 24 and 25 of Young's December 10, 2020 affidavit. (*See id.*).

In that paragraph, Young criticizes the Government's expert for excluding, without explanation, certain data points (the alleles detected at "FGA"—one of the genetic markers analyzed in a sample taken from the victim) from statistical calculations used to approximate the likelihood that Petitioner contributed the foreign DNA found in the samples taken from the victim as compared with a randomly selected individual. (*See* December 10, 2020 Young Affidavit ¶ 25). Young hypothesizes that "one possible reason" the Government failed to include these data points in the statistical is because their inclusion would have resulted in the exclusion of Petitioner as the source of the foreign DNA detected. (*See id.*). However, Young stops short of claiming that Petitioner should have been excluded based on the omitted data points and concedes that "it was not possible to exclude Mr. Shaw as the source of the [foreign DNA]" in the samples taken from the victim. (*See id.* ¶ 20).

Accordingly, Petitioner fails to demonstrate that Young informed Fury that there was a viable pathway to exclude Petitioner based on the DNA evidence, and Attorney Fury's decision not to call Young was logical and supported by the record.

habeas review (citation omitted)).

Third, Fury had more than sufficient experience to cross-examine the Government's expert. *See Strickland*, 466 U.S. at 681 (noting that the experience of the attorney is among the factors relevant to deciding whether particular strategic choices are reasonable). Fury has over 35 years of experience as a practicing attorney and specializes in criminal defense. (Fury Affidavit ¶ 2). Over the course of his career, he has resolved thousands of criminal cases in court and has tried over 50 cases to verdict. (*Id.*). Prior to Petitioner's case, he had seven cases that relied on DNA evidence and for which he worked with forensic experts. (*Id.* ¶ 3). Furthermore, Fury has taken continuing legal education classes that included training related to DNA evidence. (*Id.*).

In sum, Fury's decision not to call Young as a witness was a "strategic decision which the Court will not second guess," and was "well within the wide range of reasonable professional assistance." *Henderson v. DiGuglielmo*, 138 F. App'x 463, 470 (3d Cir. 2005). Accordingly, Petitioner fails to satisfy the first prong of the *Strickland* analysis, and the Court denies Petitioner relief on Ground One.[5]

## B.   Certificate Of Appealability

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve

---

[5] Because Petitioner's allegations as to Ground One clearly fail to demonstrate deficiency of his counsel's performance, Petitioner is not entitled to an evidentiary hearing. *See United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988) (noting that a claim does not merit a hearing if a Section 2255 motion "clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant"); *see also Campbell v. Burris*, 515 F.3d 172, 184 (3d Cir. 2008).

encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Because all of Petitioner's claims are clearly barred or meritless for the reasons expressed throughout this Opinion and the Court's May 19, 2022 Opinion, Petitioner has failed to make a substantial showing of a denial of a constitutional right, and his motion is not adequate to receive encouragement to proceed further. This Court therefore **DENIES** Petitioner a certificate of appealability.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Ground One and **DENIES** a certificate of appealability. An appropriate Order follows.

Dated: July 21, 2023                              *s/ Esther Salas*
                                                  **Esther Salas, U.S.D.J.**